## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRIAN MCDONOUGH and JOSEPH TOBIN**, on behalf of themselves and all others similarly situated,<br><br>        **Plaintiffs,**<br><br>    v.<br><br>**BAYER HEALTHCARE, LLC,**<br><br>        **Defendant.** | **Civ. No. 10-442**<br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

**WILLIAM J. MARTINI, U.S.D.J.:**

    This matter comes before the Court on Defendant Bayer Healthcare LLC's ("Bayer") motion to strike pursuant to Federal Rule of Civil Procedure 12(f) and motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, Defendant's motion to strike is **GRANTED**, and Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiffs' Amended Complaint ("Complaint") brings a putative class action on behalf of themselves and other purchasers and users of "spot on" flea and tick treatments manufactured by Defendant.  Defendant Bayer manufactures K9 Advantix, a flea and tick

control pesticide product for dogs containing the insecticide Imidacloprid and

Permethrin.  (Compl. ¶ 4.)  Bayer is considered a "spot on" flea and tick treatment

because the pesticide is applied directly to the dog's skin in a localized area.  (*See*

Compl., Ex. B.)  On April 21, 2009, the Environmental Protection Agency ("EPA"),

which regulates the safety of pesticides, issued a press release, reporting a "recent sharp

increase in the number of incidents being reported from the use of spot-on pesticide

products for flea and tick control for pets." (Compl., Ex. C.)

Plaintiffs allege that K9 Advantix is unsafe because it caused skin irritation and

neurological problems for their pets.  (Compl. ¶ 8.)  Plaintiff Brian McDonough, a

resident of New Jersey, alleges that on or about November 2009, he purchased and used

K9 Advantix on his dog.  (Compl. ¶ 27.)  Approximately one day after applying the

product, Plaintiff's dog began to have neurological problems, which were diagnosed by a

veterinarian as neurological seizures.  (Comp. ¶ 29.)  Although the Complaint focuses on

K9 Advantix, Plaintiff Joseph Tobin, a resident of California, alleges that his cat was

harmed by Bayer's Advantage product and eventually had to be put to sleep.  (Compl. ¶

30-33.)

Plaintiffs, on behalf of themselves and other purchasers of Defendant's product,

bring the following causes of action: (1) breach of express warranty (Count One); (2)

breach of implied warranty of merchantability (Count Two); (3) unjust enrichment

(Count Three); and (4) violation of the New Jersey Consumer Fraud Act ("NJCFA")

(Count Four). Specifically, Plaintiffs seek economic damages based upon the difference

2

between the amount they paid for the product and the diminished (or nonexistent) value of the product as a result of it being unsafe to apply to their pets.[1]

## II.    DISCUSSION

### A.    Motion to Strike

Defendant includes a motion to strike, pursuant to Federal Rule of Civil Procedure 12(f), with its motion to dismiss.  (Def.'s Moving Br. at 3-5.)  Defendant moves to dismiss any references to Advantage, another flea and tick product, from the Complaint, which only asserts claims related to K9 Advantix.  Additionally, Defendant moves to dismiss any reference to "cats," as K9 Advantix is a product only for use on dogs.  Because Plaintiff Joseph Tobin's factual allegations relate to using Advantage on his cat, while the causes of action stated relate only to K9 Advantix, Defendant moves to strike Joseph Tobin's factual allegations and have him dismissed from the matter.  Plaintiffs do not object, and Joseph Tobin's claims have been withdrawn at this time.  (Pls.' Reply Br. at 1.)  Additionally, Plaintiffs' do not seem to object to striking all references to "cats" and to "Advantage."  Finally, Defendant moves to strike references to "Frontline and Frontline Plus products," since those products are not manufactured by Defendant.  Since

---

[1] In addition to this action, multiple putative class actions have been filed against various other "spot on" flea and tick treatment manufacturers in this Court.  The Court has issued parallel opinions on the motions to dismiss pending in the following flea and tick treatment cases: *Smith v. Merial Limited,* Civ. No. 10-439; *Arlandson v. Hartz Mountain Corp.*, Civ. No. 10-1050; *Snyder v. Farnam Companies*, Civ. No. 10-1391; and *Johansson v. Central Garden and Pet Company*, Civ. No. 10-6372.

this is likely a typographical error by Plaintiffs, this will also be stricken.  As such, the Court grants Defendant's motion to strike in its entirety.

**B.    Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[2] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).   Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[2] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..."  *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## C.  Choice of Law Principles

Since Plaintiff Joseph Tobin has withdrawn his claims at this time in response to Defendant's motion to strike, only Plaintiff Brian McDonough remains as a named Plaintiff.  Mr. McDonough is a resident of New Jersey, and Bayer has its principal place of business in New Jersey.  Therefore, Bayer rightfully is not challenging the application of New Jersey law at this time. (Def.'s Reply Br. at 1 n.1); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir.1998) ("Until the putative class is certified, the action is one between the [named plaintiffs] and the defendants.").

## D.  Counts Two, Three and Four – Breach of Implied Warranty, Unjust Enrichment and Violation of the NJCFA

5

Defendant argues that Plaintiff's theories of breach of implied warranty, unjust enrichment, and consumer fraud are not independently actionable, as under New Jersey law, claims arising from harm caused by products can only be asserted under the NJPLA. The NJPLA governs any "product liability action," which is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3). "Harm" is defined in the statute as, "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C-1(b)(2). Thus, the Third Circuit has determined that the PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). If any of Plaintiff's claims constitute a "product liability claim," they will be subsumed under the NJPLA.

Plaintiff attempts to classify his claims as non-product liability claims by alleging only economic damages related to the price of the product as opposed to damages related to the harm caused by the product. However, "[l]imiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA." *Vercelleno v. Gerber Prods. Co.*, Civ. No. 09-2350, 2010 U.S. Dist. LEXIS 9477, at *20 (D.N.J. Feb. 3, 2010). The New Jersey Supreme Court has held that "[t]he language of the PLA

6

represents a clear legislative intent that…the PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66 (N.J. 2008). As such, regardless of how a claim is pleaded, where the *core issue* is the harmfulness of the product's chemicals, the claim must be pleaded as an NJPLA claim. *Crouch v. Johnson & Johnson*, Civ. No. 09-2905, 2010 WL 1530152, at *7 (D.N.J. April 15, 2010).

Though Plaintiff asserts contract, quasi-contract, and consumer fraud claims, the issue underlying his claims is that the chemicals in K9 Advantix are dangerous and caused physical damage to Plaintiff's property, in the form of harm to his pet's health. *See Harabes v. The Barkery, Inc.*, 791 A.2d 1142, 1144 (N.J. Super. Ct. Law Div. 2001) (classifying pets as personal property). This fits squarely within the NJPLA's definition of "harm" as "physical damage to property." N.J. Stat. Ann. § 2A:58C-1(b)(2)(a).

While Plaintiff points to the New Jersey Appellate Division case *Wendling v. Pfizer, Inc.*, No. L-348-04, 2008 WL 8333549 (N.J. App. Div. March 31, 2008), to support the position that Plaintiff's claims are not subsumed, the facts of *Wendling* are distinguishable. In *Wendling*, the plaintiffs brought a claim under the NJCFA that a product claiming to control tapeworms in horses failed to do so, causing harm to plaintiffs' horses from the tapeworms that were insufficiently treated. The Appellate Division found that plaintiffs' claim was not subsumed by the NJPLA because in *Wendling*, "it was not the product itself that caused the harm, but allegedly its misleading promotion." *Wendling*, 2008 WL 8333549, at *8. Here, Plaintiff is not alleging that

7

Defendant's product failed to kill fleas and ticks, causing harm to Plaintiff's pet because the fleas and ticks went untreated.  Instead, Plaintiff is alleging that the product is unusable as it harmed his pet in the process of successfully killing the fleas and ticks as promised.  Simply "articulating a claim in terms of pure economic harm where the core issue is the potential injury arising as a consequence of the products' allegedly harmful chemicals" does not obviate the NJPLA's reach.  *Vercelleno*, 2010 U.S. Dist. LEXIS 9477, at *20.[3]  Therefore, Plaintiff's breach of implied warranty, unjust enrichment and consumer fraud claims are subsumed under the NJPLA, as "irrespective of the theory underlying the claim," the core issue in Plaintiff's claims is "harm caused by a product." N.J. Stat. Ann. § 2A:58C-1(b)(3). While these claims fail as pleaded, the Court is making no determination at this juncture as to whether Plaintiff can successfully state a claim under the NJPLA.  As such, the Court will dismiss these claims, but will allow Plaintiff the opportunity to amend the Complaint to plead them as product liability causes of action instead.

      **E.**      **Count One – Breach of Express Warranty**

---

[3] Plaintiff attempts to distinguish *Vercelleno*, as well as various other cases finding subsumption by the NJPLA, based on reasoning provided in dicta in another decision that the NJPLA does not subsume claims where a breach of express warranty has been alleged and an NJPLA claim has not.  *See In re Ford Motor Co. E-350 Van Products,* Civ. No. 03-4558, 2008 U.S. Dist. LEXIS 73690, *48 n.9 (D.N.J. Sept. 3, 2008).  This Court disagrees with this reasoning, as no such proposition stems from the NJPLA or from the New Jersey Supreme Court's instructive decision in *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51 (N.J. 2008).  While the NJPLA does expressly exempt breach of express warranty claims, the presence or absence of either a breach of express warranty claim or an NJPLA claim does not affect the analysis of Plaintiff's other claims.

Since claims for breach of express warranty are expressly preserved by the NJPLA, Count One is not subsumed.  Defendant contends that Count One still fails to state a claim, however, because Plaintiff fails to claim that the alleged express warranties[4] were part of the "basis of the bargain" for the product.  *New Hope Pipe Liners, LLC v. Composites One, LCC*, Civ. No. 09-3222, 2009 U.S. Dist. LEXIS 111217, at *15 (D.N.J. Nov. 25, 2009).  Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiff must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.  *New Hope Pipe Liners*, 2009 U.S. Dist. LEXIS 111217, at *15; N.J. Stat. Ann. § 12A:2-313.

Plaintiff alleges that Defendant made the following affirmations and promises:

(1)     A statement on Bayer's website for veterinary professionals that its corporate mission is to "protect animals" and "safeguard[] the health of animals."  It further states that K9 Advantix is "gentle enough for puppies as young as 7 weeks." (Compl. ¶ 4; Ex. A.)

(2)     A statement on the package advertising that "Individual sensitivities, while rare, may occur after using ANY pesticide product for pets." (Compl. ¶ 9; Ex. B.)

Defendant contends that Plaintiff has failed to satisfy the "basis of the bargain" requirement, as he has not pleaded any connection between his purchasing decision and

---

[4] At this time Bayer is not challenging whether the alleged statements constitute express warranties, but has reserved the right to later raise this issue.  (Def.'s Moving Br. at 13 n.6.)

the alleged express warranties at issue.  (Def.'s Moving Br. at 12.)  However, "[t]o establish a breach of an express warranty under N.J. Stat. § 12A:2-101, the plaintiff need not prove privity or traditional reliance." *Knipe v. Smithkline Beecham,* 583 F. Supp. 2d 602, 625 (E.D. Pa. 2008).  While some states require such elements, New Jersey's "basis of the bargain" requirement is much broader.  Plaintiff must only show that the alleged express warranties "were of a kind which naturally would induce the purchase." *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008).

Defendant claims that the Third Circuit further requires that a plaintiff prove he has "read, seen, or heard the advertisements at issue" to satisfy the "basis of the bargain" requirement.  *Cipollone v. Liggett Group, Inc.,* 893 F.2d 541, 569 (3d Cir. N.J. 1990).  However, the *Cipollone* decision is narrower than Defendant's interpretation.  First, the Court in *Cipollone* pointed out that this additional burden on the plaintiff would not apply where a "written warranty delivered to the purchaser in connection with a sale" was at issue.  *Cipollone*, 893 F.2d at 567 n.29.  Here, one of the alleged warranties was included with the sale of the product, so that "there is no question that the plaintiff has knowledge that the alleged warranty exists." *Id.*  Furthermore, the requirement established in *Cipollone* was in regard to what must be included in jury instructions at trial, not what must be pleaded to survive a motion to dismiss. *Id.* at 563-64.  At this stage, it is sufficient that Plaintiff has pleaded alleged warranties that plausibly could have been the basis of the bargain. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No.

10

03-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. 2008) (holding that whether an alleged warranty was the basis of the bargain cannot be resolved on a motion to dismiss).

## III.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** as to Counts Two, Three and Four, and Counts Two, Three and Four are **DISMISSED** as subsumed under the NJPLA.  Defendant's motion to dismiss as to Count One is **DENIED**, and Defendant's motion to strike is **GRANTED**.  An Order follows this Opinion.

　s/ William J. Martini　　　　　
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26, 2011**