## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

### HON. WILLIAM J. MARTINI
### CONSOLIDATED OPINION & ORDER

| | |
|---|---|
| **SANDY SMITH, et al.,** | **Civ. No. 10-439** |
| Plaintiffs, | |
| v. | |
| **MERIAL LIMITED,** | |
| Defendant. | |
| **BRIAN McDONOUGH, et al.,** | **Civ. No. 10-442** |
| Plaintiffs, | |
| v. | |
| **BAYER HEALTHCARE, LLC,** | |
| Defendant. | |
| **AUNDRIA ARLANDSON, et al.,** | **Civ. No. 10-1050** |
| Plaintiffs, | |
| v. | |
| **HARTZ MOUNTAIN CORPORATION, et al.,** | |
| Defendants. | |
| **KRISTY SYNDER, et al.,** | **Civ. No. 10-1391** |
| Plaintiffs, | |
| v. | |
| **FARNAM COMPANIES, INC., et al.,** | |
| Defendants. | |

1

| | |
|---|---|
| **SUNNY JOHANSSON, et al.,** | **Civ. No. 10-6372** |
| **Plaintiffs,** | |
| **v.** | |
| **CENTRAL GARDEN & PET COMPANY, et al.,** | |
| **Defendants.** | |
| **LYNDA FROST, et al.,** | **Civ. No. 11-6976** |
| **Plaintiffs,** | |
| **v.** | |
| **FIDOPHARM, INC., et al.,** | |
| **Defendants.** | |

## WILLIAM J. MARTINI, U.S.D.J.:

Presently before the Court are six putative class actions which are collectively known as the Flea and Tick cases.  In each action, a group of plaintiffs residing in multiple states allege that their pets were harmed by the chemicals in various "spot-on" flea and tick prevention products manufactured and/or sold by defendants, in spite of clear indications that those products posed a risk of harm to the animals.  All plaintiffs are represented by the same group of attorneys.[1]  Although there is at least one motion to dismiss pending in each matter, because ruling on several issues common to all six matters may advance the ultimate resolution of these cases, and in light of the motions to

---

[1] The attorneys of record for plaintiffs in *Smith v. Merial Limited*, *McDonough v. Bayer Healthcare, LLC*, *Snyder v. Farnam Companies, Inc.* and *Frost v. FidoPharm, Inc.* are Gary S. Graifman, Michael S. Green, Paul S. Diamond, and Jeffrey S. Herrman.  Counsel of record for plaintiffs in *Johansson v. Central Garden & Pet Company* are James E. Cecchi, Lindsay S. Taylor, Eric Freed and Julie D. Miller.  All of the aforementioned attorneys, as well as Christopher Seeger, Stephen A. Weiss, James A. O'Brien III, Ron H. Meneo, Chris Brown, J. Mitchell Clerk, and Steven A. Kanner represent plaintiffs in the lead Flea and Tick case, *Arlandson v. Hartz Mountain Corporation*.

strike plaintiffs' class claims which several defendants' contemporaneously filed with their motions to dismiss,[2] the Court will require additional briefing on several issues germane to class certification prior to ruling on the outstanding motions to dismiss.  *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 309 (3d Cir. 2009) ("[t]he trial court . . . possesses broad discretion to control proceedings and frame [class certification] issues"); Fed. R. Civ. P. 42(a)(3) ("[i]f actions before the court involve a common question of law or fact, the court may . . . issue any other orders to avoid unnecessary cost or delay").

In doing so, the Court will first review: (1) the claims asserted in the Flea and Tick cases prior to the May 26, 2011, (2) the central holdings of the Court's May 26, 2011 Opinions and Orders, (3) the claims currently asserted by the Flea and Tick plaintiffs, which have been pled in accordance with the Court's May 26, 2011 rulings, and (4) the class certification requirements of Fed. R. Civ. P. 23.

### 1.  The Flea and Tick Pleadings Prior to the Court's May 26, 2011 Rulings

The Flea and Tick cases, which remain at the pre-answer stage of litigation, are not newly before this Court.[3]  In the prior pleadings in *Smith*, *McDonough*, and *Arlandson*, and *Snyder*, which were all originally filed in the District of New Jersey (the

---

[2] *See Arlandson* at ECF Nos. 95 (filed by Defendant Summit Vetpharm LLC) and 114 (filed by Defendant Wal-Mart Stores, Inc.); *Snyder* at ECF No. 30 (filed by Defendants Farnam Companies, Inc. and Wellmark International, Inc.); and *Johansson* at ECF No. 44 (filed by Defendants Central Garden and Company and Farnam Companies, Inc.).

[3] The only case which the Court has not previously issued an opinion in is *Frost v. FidoPharm, Inc.*  Although that matter is newly filed, the Court will require additional briefing in *Frost* in accordance with this Opinion & Order for two reasons.  First, the flea and tick product at issue in *Frost* uses the same active ingredients and is marketed as the generic version of the product at issue in *Smith*.  Second, the counts in *Frost* have been pled in accordance with the May 26, 2011 rulings in the other Flea and Ticks cases, and *Frost*, therefore faces the same class certification obstacles as those cases.

"District of New Jersey Cases"), all plaintiffs sought relief under the same four causes of action: (1) breach of express warranty, (2) breach of implied warranty, (3) unjust enrichment, and (4) violation of New Jersey's Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq.*[4]

In the prior pleading in *Johansson*, which was originally filed in the Northern District of California and subsequently transferred to this Court, plaintiffs asserted causes of action for (1) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, (2) breach of implied warranty of merchantability, (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), (4) strict products liability, (5) violation of the California Consumer Legal Remedies Act, Cal Civ. Code § 1770(a), and (6) punitive damages, Cal. Civ. Code § 3345.

## 2. The Court's May 26, 2011 Flea and Tick Rulings

On May 26, 2011, this Court issued five parallel Opinions and Orders ("Parallel Opinions") regarding the then-pending motions to dismiss separately filed in *Smith*, *McDonough*, *Arlandson*, *Snyder* and, *Johansson*.  Although each Parallel Opinion was tailored to address particular facts alleged in each case, the Court's rulings are consistent.[5]

---

[4] Plaintiffs in *Snyder* also asserted a fifth count against defendants for violating the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505, *et seq.*
[5]  For purposes of review, the Court relies primarily on the *Arlandson* Opinion.

First, the Court ruled that plaintiffs' claims are not pre-empted by the Federal Insecticide, Fungicide, and Rodentcide Act, 7 U.S.C. § 136 ("FIFRA").[6]   (*Arlandson* Op. at 13-14, ECF No. 77.)   Second, the Court dismissed plaintiffs' New Jersey CFA claim after ruling that New Jersey's Products Liability Act ("PLA") – and not its CFA – is the governing statute for the harm caused to plaintiffs' pets by defendants' products.  (*Id.* at 16 (citing N.J.S.A. § 2A:58C-1(b)(3)).)   Accordingly, any plaintiff entitled to seek relief under New Jersey law had to amend his pleading to assert a claim under New Jersey's PLA (the "CFA/PLA Claim").  Third, the Court made several choice of law determinations in the District of New Jersey Cases that adversely affect the likelihood of class certification in these cases.

### i.   Choice of Law Generally

Because plaintiffs' claims arise under state law, the Court will eventually have to determine which states' laws govern all of plaintiffs' claims, on an issue-by-issue basis. In reaching this decision, the Court must first determine if there is an actual conflict between states' laws.  If there is no conflict, the law of the forum state applies.  However, if there is a conflict, the Court must then determine which state's law applies to each claim asserted by plaintiffs, based on the specific choice of law test of the forum where the action was initiated.  (*Arlandson* Op. at 9-11.)

---

[6]  As the Parallel Opinions make clear, this ruling was made only after thoughtful consideration and a thorough legal analysis.  Nonetheless, a number of defendants continue to advocate for the Court to change its position on the FIFRA pre-emption issue.  The Court will not, however, revisit its FIFRA determination.

### ii. Choice of Law in *Smith*, *McDonough*, *Arlandson* and *Snyder*

While the Court has not yet made choice of law determinations on a number of plaintiffs' claims, in the four District of New Jersey cases, the Court made choice of law rulings on plaintiffs' CFA/PLA and unjust enrichment claims.

In those four cases, after applying New Jersey's "most significant relationship" choice of law test, the Court determined <u>first</u>, that as to plaintiffs' CFA/PLA claim, non-New Jersey plaintiffs could not seek relief under New Jersey's CFA or its PLA, and would have to amend their pleadings to instead plead those claims under their own states' products liability and/or consumer fraud statutes. (*Arlandson* Op. at 15, 29.) <u>Second</u>, that New Jersey law could be applied to all plaintiffs' unjust enrichment claims. (*Id*. at 33.)

The Court declined, however, to conduct a choice of law analysis as to the District of New Jersey plaintiffs' breach of warranty claims because the factual record was not yet full enough to make a choice of law determination on that issue. (*Id*. at 20-21.)

### iii. Choice of Law in *Johansson*

In *Johansson*, which was transferred from the Northern District of California, the Court altogether declined to conduct a choice of law analysis using California's "governmental interest" test because that issue was not fully briefed for the Court. (*Johansson* Op. at 8-9, ECF No. 36.)  The Court nonetheless dismissed plaintiffs' causes of action for breach of implied warranty of merchantability and violation of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), for failure to plead privity, as required under California law.  (*Id.* at 12-14.)

### 3.  The Current Flea and Tick Pleadings

In all five Flea and Tick actions that were the subjects of the Parallel Opinions, plaintiffs were given thirty days to amend their pleadings in a manner consistent with the Parallel Opinions' rulings.  Plaintiffs responded by filing amended pleadings in all five cases.  In addition, another group of plaintiffs – who are represented by the same attorneys as in the other five Flea and Tick cases – initiated a new (and now sixth) Flea and Tick action, *Frost v. FidoPharm.*

Presently, the pleadings in *Smith*, *McDonough*, *Arlandson*, *Synder*, and *Frost* – which have all been pled in accordance with the choice of law rulings of the Parallel Opinions – assert claims for: breaches of express and implied warranties arising under unspecified state law, an unjust enrichment claim arising under New Jersey law, and violations of the consumer fraud and/or products liability statutes of each plaintiffs' home state.  In *Johansson*, the only Flea and Tick case in which the Court did not require plaintiffs to amend their pleadings based on the Parallel Opinions' choice of law rulings, plaintiffs have repled the same causes of action which they asserted prior to the Court issuing the Parallel Opinions.

As currently pled, the named plaintiffs in the Flea and Tick cases assert claims arising under the laws of the twenty states in which they collectively reside.  And in each individual action, there are plaintiffs who are residents of at least two separate states.  All

six pleadings also propose classes for class certification under Rule 23 of the Federal

Rules of Civil Procedure 23.

### 4.  Class Action Certification Under Rule 23

Rule 23 of the Federal Rules of Civil Procedure governs class actions.  *Wal-Mart*

*Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  Pursuant to that Rule, class

certification will only be appropriate if the Court is satisfied, after a rigorous analysis,

that: (1) all four general class action prerequisites of Rule 23(a)[7] are met **and** (2) that the

action is maintainable under one of the three categories set forth in Rule 23(b).  *In re*

*Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 309 (3d Cir. 2009).  Plaintiffs, as the

party seeking certification, have the burden of demonstrating that both prerequisites are

met.  *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 157 (E.D. Pa. 2002), aff'd, 2003 WL

355417 (3d Cir. 2003).

Although plaintiffs have not yet moved for class certification, at this stage in the

litigation, and setting aside consideration of whether plaintiffs can meet the additional

requirements of R. 23(a), the Court has serious concerns that plaintiffs can ever meet the

certification requirements of R. 23(b), which states, in relevant part, that:

> "A class action may be maintained if Rule 23(a) is satisfied and if:
> . . . .
> (2) the party opposing the class has acted or refused to act on grounds that apply
> generally to the class, so that final injunctive relief or corresponding declaratory
> relief is appropriate respecting the class as a whole; or

---

[7] Specifically, "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of
law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or
defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b).

First, certification under 23(b)(2) appears entirely inappropriate in these cases because certification of a (b)(2) injunctive class is improper when the relief sought is primarily monetary in nature and here, plaintiffs all seek to recover damages for the allegedly defective products sold and/or manufactured by defendants.  *See, e.g., Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, No. 07-4925, 2008 WL 4056244 at *10 (D.N.J. 2008) (citing *Angelastro v. Prudential-Bache Securities, Inc.*, 113 F.R.D. 579, 583 (D.N.J.1986)).

Second, certification under 23(b)(3) also seems unlikely because the variances in the states' laws governing each plaintiff's claims create manageability concerns which can render class certification inappropriate, particularly because these matters have the potential to be tried before a jury.  *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 529 (3d Cir. 2004); *Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429, 441 (C.D. Cal. 2007); *see also Sullivan v. DB Investments*, 667 F.3d 273,304 (3d Cir. 2011) (recognizing "the difficulties inherent in proving the elements of varied claims at trial [and] in

9

instructing a jury on varied state laws") *and Chilton Water Authority v. Shell Oil Co.*, 1999 WL 1628000 at *4 (M.D. Ala. 1999) (class allegations stricken where Rule 23(b)(3) could not be satisfied because of necessity of applying laws of 50 states).  *See also*, McLaughlin on Class Actions: Law and Practice, § 5:57 (8th ed. 2011) ("[n]umerous courts have recognized that conflicts exist about state substantive laws . . . and that this is a formidable barrier to certification of multi-state class"); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001) ("[b]ecause [plaintiff] seeks certification of a nationwide class for which the law of forty-eight states potentially applies, she bears the burden of demonstrating 'a suitable and realistic plan for trial of the class claims.'") (quoting *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J.1998)).  *But see Sullivan* at 302 (3d Cir. 2011) ("if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards," then certification of subgroups "embracing each of the dominant legal standards can be appropriate").

The Court has already ruled that it must apply the laws of each plaintiff's state to their consumer fraud and/or products liability claims in the District of New Jersey Cases.[8] Moreover, although the Court has not yet conducted a choice of law analysis on plaintiffs' warranty claims, such an analysis must be conducted prior to class certification.  *Powers v. Lycoming Engines*, 328 Fed. App'x 121, 124 (3d Cir. 2009) ("[a] necessary precondition to deciding Rule 23 [certification] issues is a determination of the

---

[8] Although the Court has not yet conducted a choice of law analysis in *Johannson*, it appears that the Court will arrive at the same conclusion once it applies California's "governmental interest" choice of law test as to plaintiffs' Unfair Competition and Consumer Legal Remedy Act claims.  *See e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 587 (9th Cir. 2012) (class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place).

state whose law will apply"). It appears that when this is done, the Court will have to apply the law of each plaintiff's home state to their breach of express and implied warranty claims as well, thereby making these cases even more unwieldy. *See, e.g.*, *Iknonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 265 (S.D. Cal. 1998) (laws of different states would apply to pet owner plaintiffs seeking to recover under theories of negligence, breach of warranty and products liability law for harm caused to their pets by the chemicals in defendant's flea and tick spray); *Chin*, 182 F.R.D. at 460 (D.N.J.1998) (genuine conflicts between states' breach of implied and express warranty laws). *See also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (noting that few warranty cases ever have been certified as class actions "with the additional choice-of-law problems that complicate such a venture").

### i.      Application of the States' Laws in *Smith v. Merial Limited*

A review of the interplay of different states' laws in just one of the Flea and Tick cases, *Smith v. Merial Limited*, shows why distinctions in those states' laws present the type of manageability concerns which will most likely preclude class certification in these matters.

In *Smith*, there are three plaintiffs from Pennsylvania, New Jersey and Tennessee, respectively. Plaintiffs asserts claims for: (1) breach of express warranty, (2) breach of implied warranty, (3) unjust enrichment, and for violations of (4) Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCL"), 73 Pa. Cons. Stat. Ann. §§ 201-1, *et seq.*, (5) New Jersey's PLA, and (6) Tennessee's PLA, Tenn. Code Ann. §§ 29-

11

28-101, *et seq.*  As determined in the Parallel Opinions, New Jersey's PLA subsumes all counts for Kathleen Maxson, the New Jersey plaintiff, with the exception of her claim for breach of express warranty, so that she may seek relief under Counts (1) and (5) only.  It also appears that Tennessee's PLA subsumes all other counts as to Sandy Smith, the Tennessee plaintiff, so that Ms. Smith may only seek relief under Count (6).  *See* Tenn. Code Ann. § 29-28-102(6).   Finally it appears that Pennsylvania's UTPCL does not subsume either warranty claim, so that Roseann Turek, the Pennsylvania plaintiff, may seek relief under Counts (1), (2), and (6).

Furthermore, it appears that while Ms. Turek and Ms. Maxson may both assert a breach of express warranty claim, whereas under Pennsylvania law, Ms. Turek must prove justifiable reliance, *Yurcic v. Purdue Pharma, L.P.*, 343 F.Supp.2d 386, 394 (M.D. Pa. 2004), under New Jersey law, Ms. Maxson is not required to prove such reliance, *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008), meaning that the Court will need to apply a different legal standard for each plaintiff for that claim as well.  In sum, after applying the laws of only three states (out of at least 20, and potentially 50), it appears that variance in the states' laws present the types of insuperable manageability obstacles that render certification of a 23(b)(3) class inappropriate.

Finally, while the Court previously ruled that there is no conflict between the states' unjust enrichment laws, class certification under that legal theory also seems unlikely.  *See* McLaughlin on Class Actions, § 5:60 ("[t]he majority view is that unjust

12

enrichment claims usually are not amendable to class treatment because the claim requires evaluation of the individual circumstances of each claimant").

### 5. In Light of the Foregoing, the Court Will Require Additional Briefing

At present, it appears that plaintiffs will be unable to ever meet the class certification requirements of Rule 23(b), and thus, that class certification in the Flea and Tick cases is unlikely.  And that prediction does not account for the additional certification requirements plaintiffs must meet pursuant to R. 23(a).

Several parties appear to have anticipated this finding, because four defendants (in three cases) have included motions to strike the class claims with their motions to dismiss.  For all practical purposes, those defendants have preemptively moved for the denial of class certification.  *See* McLaughlin on Class Actions, § 3:4 ("[a]n order granting a motion to strike class allegations is tantamount to a denial of class certification after a motion to certify").  And those motions are properly before the Court.  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n. 3 (D.N.J. 2003).  *See also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) ("[u]nder [Fed. R. Civ. P. 12(f),] 23(c)(1)(A) and 23(d)(1)(D), [district courts have the] authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained").

However, although the Court has the authority to strike the class claims at present, the Court also has a responsibility to thoroughly scrutinize whether the requirements of Rule 23 are satisfied.  *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 316 n.

15.  *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162

(3d Cir. 2001) ("denying or granting class certification is often the defining moment in

class actions").

Therefore, at present, the Court will require additional and limited briefing on

certain class certification issues.  In ordering further briefing, the Court notes the

following:  First, the Court has a responsibility to determine whether class certification is

appropriate "[a]t an early practicable time."  Fed. R. Civ. P. 23(c)(1).  And here, the

Court intends to decide the class certification issues in these matters before ruling on the

pending dispositive motions.  *See*, *e.g.*, *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651,

654 (D. Nev. 2009) (ordering additional briefing on choice of law issues prior to ruling

on defendant's pending motion to dismiss, and ultimately decertifying the class prior to

discovery).

Second, Judge Hayden already denied class certification in a related Flea and Tick

case filed by the same group of plaintiffs' attorneys.  *See Mahtani v. Wyeth*, No. 08-6255,

2011 WL 2609857 (D.N.J. June 30, 2011).  There, the parties engaged in discovery

before Judge Hayden made that ruling.  The Court would like to be informed on the

scope of that discovery, and how it relates to the class certification issues in these cases.

Third, because the cases are not newly before the Court, the parties have had the

opportunity to develop at least a partial factual record in anticipation of an eventual Rule

23 determination.  *Vionole v. Countrywide Homeloans, Inc.*, 571 F.3d 935, 943 (9th Cir.

2009) (class decertification proper where plaintiffs had nearly ten months to conduct

14

informal and formal discovery between the time plaintiffs filed their original class action complaint and their opposition to defendant's motion to decertify).

### 6. Conclusion

For the reasons set forth in this Opinion & Order, and for good cause shown, it is on this 5th day of June, 2012,

**ORDERED** that within forty-five days of entry of this Opinion & Order, plaintiffs shall submit one brief,[9] limited to forty pages, which addresses the following: (1) why the Court should not presently conduct a choice of law analysis on the remainder of plaintiffs' claims, (2) why such an analysis will not show that the Court must apply the laws of each plaintiff's state to those claims, (3) how the manageability concerns based on variances in states' laws for each plaintiff's claims will not preclude R. 23(b)(3) class certification in light of such an analysis, and (4) what discovery has already been conducted in: (i) *Mahtani*, and (ii) in the six Flea and Tick cases before this Court (if any), and how that discovery (or lack thereof) should guide the Court's analysis of the class certification issues discussed in this Opinion & Order;

**FURTHER ORDERED** that within twenty-one days of the plaintiffs filing their brief, each defendant may file a brief, limited to ten pages, in response to plaintiffs' submission;

---

[9] The Court wishes to be crystal clear:  Plaintiffs may submit one brief for all six cases.  Thus, if Plaintiffs electronically file the brief on each case's individual docket, it will be an identical document that is e-filed six times. The brief shall also comply with the font and spacing requirements of District of New Jersey Local Civ. R. 7.2.  The Court will not tolerate any attempts to circumvent this mandate.

**FURTHER ORDERED** that within fourteen days of the last-filed responsive brief filed by a defendant, plaintiffs may submit one reply brief, limited to fifteen pages, in response to all defendants' submissions;

**FURTHER ORDERED** that in light of the Court's determination that it will first address the class certification issues discussed *supra*, the motions to dismiss that are pending in each the six Flea and Tick cases are administratively terminated, without prejudice, to be reinstated at a later date, if necessary.

 s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 5, 2012**

16